IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOE DISHNER, Individually and as §
Executor of The ESTATE OF RUTH §
ANNE MARDOCK, EMMA §
DISHNER and GEORGE DISHNER, §
§
Plaintiffs, §
§ Civil Action No. 3:17-CV-3321-D
VS. §
§
UNIVERSAL HEALTH SERVICES, §
INC., §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

In this wrongful death action, defendant Universal Health Services, Inc. ("UHS") moves under Fed. R. Civ. P. 12(f) to strike portions of plaintiffs' first amended complaint ("complaint"). For the reasons that follow, the court grants the motion in part and denies it in part and grants plaintiffs leave to replead.

I

Plaintiffs Joe Dishner, Emma Dishner, and George Dishner ("the Dishners") bring this action against defendant UHS, asserting claims arising out of the death of Ruth Anne MarDock, M.D. ("Dr. MarDock"). The Dishners allege that Dr. MarDock was working as an independent contractor at UHS's Timberlawn Behavioral Health System facility ("Timberlawn") when she was tackled by a patient, resulting in serious head injuries that

ultimately caused her death. Dr. MarDock's surviving spouse and children, in turn, bring claims under the Wrongful Death Act, Tex. Civ. Prac. & Rem. Code §71.001, *et seq*.

The Dishners' complaint makes allegations about UHS's finances, including that UHS implements a business strategy of reducing staffing, safety, supervision, and management expenses; that UHS relies on, and reaps the benefits of, government funding along with "lower government scrutiny"; that, as a result of insufficient personnel and safety expenditures, UHS has been sued numerous times and cited by various agencies for inadequate staffing at facilities around the country; that patients have been sexually assaulted and otherwise harmed in facilities other than Timberlawn; that Timberlawn, where Dr. MarDock was working at the time she was attacked, is responsible for several similar safety incidents and fines; and that Timberlawn lost its federal funding as a result of failure to comply with patient safety, staffing, and other guidelines. UHS moves under Rule 12(f) to strike these parts of the complaint, contending that they do not comply with Rule 8(d)(1) standard that pleadings be "simple, concise, and direct."

II

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f). The decision to grant a motion to strike is within the court's discretion. *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004) (Fitzwater, J.), *aff'd on other grounds*, 277 Fed. Appx. 483 (5th Cir. 2008). "The essential function of a Rule 12(f) motion is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues

prior to trial.'" *Doe v. Roman Catholic Diocese of Galveston-Hous.*, 2006 WL 2413721, at *2 (S.D. Tex. Aug. 18, 2006) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)), *rev'd on other grounds*, 510 U.S. 517 (1994)). Motions to strike are generally viewed with disfavor and are seldom granted, because these motions seek a "drastic remedy" and are often "sought by the movant simply as a dilatory tactic." *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) (Cummings, J.) (citing *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)). "Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." *Pan Am. Life Ins. Co. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962) (quoting 2 Moore's Fed. Prac., 2d ed., P12.21(2)); *see also Florance v. Buchmeyer*, 500 F.Supp.2d 618, 645 (N.D. Tex. 2007) (Ramirez, J.) (Rule 12(f) motions "are viewed with disfavor" and should be granted "only when the pleading to be stricken has no possible relation to the controversy.") (citations omitted)), *rec. adopted*, 500 F.Supp.2d at 624 (N.D. Tex. 2007) (Lynn, J.).

"[W]hen there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike." *Augustus*, 306 F.2d at 868 (footnotes omitted). "Prejudice results to the moving party where the allegation or defense would have 'the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party.'" *Certain Underwriters at Lloyd's v. Bell*, 2014 WL 4546046, at *4 (S.D. Miss. Sept. 11, 2014)

(quoting *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997).

III

UHS contends that ¶¶ 11-24 of the complaint describe a practice of "corporate greed" and "putting profits ahead of safety," and that the allegations "are immaterial to Dr. MarDock's death at Timberlawn," D. Br. 4; that ¶¶ 25-43, regarding inspection reports and lawsuits at non-Timberlawn facilities, are based on "other people's allegations and hearsay," and have no relevance to the circumstances of Dr. MarDock's attack at Timberlawn, *id.* at 5; and that pleadings of previous events are irrelevant because the suggested patterns neither indicate the "individualized circumstances and the purported dangers" of the Timberlawn facility at the time of Dr. MarDock's attack, nor demonstrate "that UHS knew or had reason to know of such an attack," D. Reply 3.

The Dishners respond that the challenged parts of the complaint are material and pertinent to establish their claims for premises liability,[1] negligence,[2] and gross negligence.[3]

---

[1]The elements of a premises liability claim for an invitee are:

> (1) *the defendant had actual or constructive knowledge of a condition on its premises*, (2) the condition posed an unreasonable risk of harm, (3) the defendant did not exercise reasonable care to reduce or eliminate the risk, and (4) the defendant's failure to use such care proximately caused her injuries.

*Rivers v. Kroger Tex. L.P.*, 2009 WL 2596601, at *2 (N.D. Tex. Aug. 21, 2009) (Fitzwater, C.J.) (emphasis added) (citations omitted).

[2]"The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) *a breach of that duty*; and (3) damages proximately caused by that breach."

They maintain that the allegations are relevant for establishing the actual or constructive knowledge element for the premises liability claim, and demonstrate the breach of duty element for their premises liability and negligence claims. The Dishners also contend that the challenged paragraphs are material to their gross negligence claims and are probative of UHS's subjective awareness of the risks involved and its conscious indifference to the risks. They posit that the context provided by these background allegations enables the complaint to meet the required plausibility standard.[4]

---

*Bent v. Mackie Wolfe Zientz & Mann, P.C.*, 2013 WL 4551614, at *5 (N.D. Tex. Aug. 28, 2013) (Fitzwater, C. J.) (emphasis added).

[3]Gross negligence requires showing an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the *probability and magnitude of the potential harm to others*; and
> (B) of which the actor has *actual, subjective awareness of the risk involved, but nevertheless proceeds* with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code Ann. § 41.001 (West 2015) (emphasis added).

[4]To state a claim on which relief can be granted, the complaint "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *In re IntraMTA Switched Access Charges Litig.*, 2017 WL 1709691, at *3 (N.D. Tex. May 3, 2017) (Fitzwater, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires demonstrating "more than a sheer possibility," but does not require probability, "that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555) (internal quotations omitted). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than . . . 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted).

IV

A

The court agrees that ¶¶ 11-43 of the first amended complaint—set out under the rubric "UHS Generally"—are immaterial and impertinent. The background information alleged in ¶¶ 11-24 addresses the financial structure and revenue sources of UHS as a whole, and an alleged strategy of increasing profitability through "more efficient management of the operating expenses." Compl. ¶¶ 11-24. These background fact allegations are not relevant to any specific element of a premises liability or negligence claim that the Dishners bring. The Dishners maintain that the claims show a profit motive resulting in an alleged "conscious indifference," as required to prove gross negligence.[5] Paragraphs 11-24, however, go well beyond a "simple, concise, and direct"[6] allegation demonstrating a plausible claim that UHS was consciously indifferent to safety issues at the Timberlawn facility. Rule 8(d)(1); *see also Twombly*, 550 U.S. at 570; *Hartz v. Friedman*, 919 F.2d 469, 471 (7th Cir. 1990) (concluding

---

[5]Plaintiffs cite *Louisiana-Pacific Corp. v. Andrade*, 19 S.W.3d 245, 247-48 (Tex. 1999), to support the contention that corporate safety policies, or a lack of such policies, are relevant to a gross negligence claim. The pleadings here, however, neither allege a specific safety policy nor assert the non-existence of a policy. Rather, the complaint merely allege that UHS has reduced "staffing management, safety, and security costs." Compl. ¶ 18. While a specific corporate policy may be relevant to gross negligence claims, the mere practice of attempting to increase operational efficiency does not bear on whether UHS was indifferent to safety issues at Timberlawn.

[6]"[T]hough a statement of a claim sufficiently shows that the pleader may be entitled to relief and thus satisfies the test of Rule 8(a), the district judge still may order it revised pursuant to a . . . motion to strike." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1203 (3d ed. 2017).

that "including a mass of details which might be relevant and appropriate at trial, but which are clearly surplusage in stating a claim[,]" is a violation of Rule 8).

Paragraphs 25-43 are similarly deficient. While the events described in the pleading are upsetting, they are not relevant to the conditions at Timberlawn or the events related to the attack on Dr. MarDock. None of the incidents, reports, or lawsuits pleaded in this section are related to the Timberlawn facility in question, and many occurred several years before the principal events at issue in this case. Although the Dishners contend that this section of the complaint illustrates the actual or constructive knowledge element for premises liability and negligence claims, the events described are too attenuated to demonstrate knowledge of Timberlawn's alleged conditions, and "[s]uperfluous historical allegations are properly subject to a motion to strike." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)); *M v. Neustrom*, 2018 WL 1310100, at *2 (W.D. La. Mar. 13, 2018) (ordering plaintiff to replead due to superfluous historical allegations unrelated to incident at issue)[7]; *see, e.g., Healing v. Jones*, 174 F. Supp. 211, 220 (D. Ariz. 1959). The Dishners' attempt to establish constructive knowledge through a pattern

---

[7]The defense in *Neustrom* moved to strike the pleadings in part because they contained superfluous historical allegations that detailed the history of jail operations for decades, referenced reports and events outside the time frame relevant to the case, and discussed unrelated maintenance deficiencies. The court ordered plaintiffs to replead by "eliminating lengthy allegations related to historical information and/or reports[,] instead inserting brief, concise allegations that DIRECTLY apply to the alleged incident[.] *Neustrom*, 2010 WL 1310100, at *2.

of past behavior can be accomplished via a shorter, simpler, and more concise pleading than is found in current ¶¶ 25-43.

B

The court agrees with the Dishners that ¶¶ 44-54 are sufficiently material and pertinent to avoid being stricken. These allegations pertain directly to events that occurred at Timberlawn, and they allege that federal investigations resulted in Timberlawn's losing its funding and license as a result of inadequate safety and staffing. This section of the complaint is directly relevant to the conditions at the Timberlawn facility when Dr. MarDock was attacked, and are pertinent to the question whether UHS knew about, reasonably should have known, and failed to address the safety risks at the facility. *See Rivers*, 2009 WL 2596601, at *2 (listing actual or constructive knowledge as elements of premises liability claim); *Bent*, 2013 WL 4551614, at *5 (listing breach of legal duty as element of negligence claim).

C

Having decided that ¶¶ 11-43 are immaterial and impertinent, the court now considers whether they are prejudicial to UHS.

UHS maintains that the challenged parts of the complaint present two types of prejudice: (1) undue expenditure of time and money to respond to the complaint and litigate issues that are immaterial to the claims; and (2) overly broad, voluminous, and complex discovery. UHS cites a concern about having to litigate "25-plus mini-trials within this case," and the complexity of applying various privileges stemming from the immaterial

claims to the discovery process. D. Br. 5.

In response, the Dishners first re-assert the materiality of the system-wide issues they have pleaded. This argument is unpersuasive in light of the court's conclusion above that ¶¶ 11-43 of the amended complaint are immaterial and impertinent as pleaded

The Dishners maintain second that Rule 26(b) is the appropriate method for challenging the scope of discovery. But while Rule 26(b) provides remedies for unduly broad and burdensome discovery, the scope of permissible discovery is tethered to the pleaded claims and defenses. *See* Rule 26(b)(1). Moreover, Rule 26 does not provide a remedy for the initial prejudice caused by requiring UHS to respond to a complaint in which 32 paragraphs are immaterial and impertinent in their current form. Even when a complaint contains a clear statement, length alone can sufficiently "render[] it laborious to comprehend and manage." *Anserv Ins. Servs., Inc. v. Albrecht In & For Cnty. of Maricopa*, 960 P.2d 1159, 1160 (Ariz. 1998), *as corrected* (July 7, 1998), *as corrected* (July 31, 1998). Additional prejudices arises when, as here, the pleadings would require defendants to respond to unnecessary discovery. *Neustrom*, 2018 WL 1310100, at *2. The court concludes that the expenditures of responding to and litigating ¶¶ 11-43, and the corresponding discovery costs, are sufficiently prejudicial to warrant striking these paragraphs.

Having concluded that ¶¶ 11-43 are immaterial, impertinent, and prejudicial to UHS, the court grants the motion to strike these paragraphs. Because ¶¶ 44-54 are not immaterial or impertinent, no prejudice analysis is required, and the court denies the motion to strike as it pertains to these paragraphs.

V

Although the court is granting in part UHS's motion to strike, it will permit the Dishners to file a second amended complaint. This case was filed December 7, 2017 and is in its very early stages. There is no reason to vary from the premise of Rule 15(a)(2) that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2).

* * *

For the reasons set out, the court grants the motion to strike ¶¶ 11-43 of the complaint and denies the motion to strike ¶¶ 44-54. The Dishners may file a second amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

April 4, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE